❏ Original ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )     Case No. 24-930M(NJ) |
| Cellular Devices A & C, currently in law | ) |
| enforcement custody, as further described in | ) |
| Attachment A | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

    An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the    Eastern    District of    Wisconsin
*(identify the person or describe the property to be searched and give its location):*

    See Attachment A.

    I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    See Attachment B.

    **YOU ARE COMMANDED** to execute this warrant on or before 11/8/2024     *(not to exceed 14 days)*
   ❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

    Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

    The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Hon. Nancy Joseph    .
                                                          *(United States Magistrate Judge)*

    ❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
   ❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: 10/25/2024 @ 2:56 p.m. _____      *[signature]*
                                                   *Judge's signature*

City and state:    Milwaukee, WI _____      Honorable Nancy Joseph, U.S. Magistrate Judge
                                                                      *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# <u>ATTACHMENT A</u>

The property to be searched is:

    a.   A blue iPhone 12 pro max with an otter box case, listed under Milwaukee Police Department Inventory number 21025549, item 1, (Referred to herein as "Device A"). Device A is currently located at the Federal Bureau of Investigation Milwaukee Field Office located at 3600 S. Lake Drive, St. Francis, WI 53235.

    b.   A red Apple iPhone XR Apple iPhone bearing serial number DX3ZP3D0KXKT (Referred to herein as "Device C"). Device C is currently located at the Federal Bureau of Investigation Milwaukee Field Office located at 3600 S. Lake Drive, St. Francis, WI 53235.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 371 (conspiracy to violate the laws of the United States), 18 U.S.C. §§ 1341, 1349 (mail fraud & mail fraud conspiracy), and 18 U.S.C. §§ 1958 & 2(a) (murder for hire and conspiracy to commit murder for hire) and §§ 924(c)(1)(A)(iii) & 2(a) (discharge a firearm during a crime of violence), involving Ronnell BOWMAN and others, including but not limited to the following:

     a.   Any communications between BOWMAN and any co-conspirators on April 5, 2021 or communications in furtherance of the murder for hire scheme;

     b.   Location information of BOWMAN and any co-conspirators on April 5, 2021 and any information regarding BOWMAN's schedule, pattern of movement or travel;

     c.   Any payment information including bank transfers, Cashapp transfers, text messages, social media messages, audio/video messages or photographs of bank records, or other financial records;

     d.   Photographs of any firearms or machinegun conversion devices;

     e.   Records of Internet Protocol addresses used; records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

     f.   Any information related to the application for, receipt of, or expenditure of any unemployment insurance benefits; and

     g.   Any information related to the solicitation or recruitment of anyone to aid, abet, or assist in the application of unemployment insurance benefits.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

1

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Cellular Devices A & C, currently in law enforcement<br>custody, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No. 24-930M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 371; 1341 and 1349;<br>1958 & 2(a); 924(c)(1)(A)(iii) | Conspiracy to violate the laws of the United States; Mail fraud & mail fraud<br>conspiracy; Murder for hire and conspiracy to commit murder for hire; & Discharge<br>a firearm during a crime of violence. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jacob Dettmering, FBI SA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: 10/25/2024
_____
*Judge's signature*

City and state:   Milwaukee, WI          Honorable Nancy Joseph, U.S. Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN
# APPLICATION FOR A SEARCH WARRANT

I, **Jacob A Dettmering**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      The Federal Bureau of Investigation (FBI) currently has in their lawful possession Device A, a cell phone that was in the possession of Ronell Bowman. This warrant seeks authorization to re-examine electronically stored information contained on Device A related to an ongoing investigation into the "Wild 100's", a violent street gang in Milwaukee, for evidence of violations of 18 U.S.C. §§ 1958 & 2(a) (murder for hire and conspiracy to commit murder for hire) and §§ 924(c)(1)(A)(iii) & 2(a) (discharge a firearm during a crime of violence), 18 U.S.C. § 371 (conspiracy to violate the laws of the United States), and 18 U.S.C. §§ 1341, 1349 (mail fraud and conspiracy to commit mail fraud).

3.      Device A was previously forensically downloaded pursuant to a federal search warrant 21-953M(NJ), signed by the Honorable Nancy Joseph on September 7, 2021. Device C was previously forensically downloaded pursuant to a federal search warrant 21-MJ-2304 signed by the Honorable Frances Stacey, United States Magistrate Judge in the Southern District of Texas, on October 28, 2021.  The execution of these search warrants resulted in only partial extractions of Devices A and C because the devices' passcodes were unknown.  However subsequent investigation has yielded that passcode, and as will be described below, your affiant believes a

new forensic extraction of that phone using the known passcode will result in additional evidence, as described in Attachment B.

**AGENT BACKGROUND**

4.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018. I was assigned to the FBI Capital Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018, to April 1, 2020. Since April 1, 2020, I have been assigned as the Task Force Coordinator for the Milwaukee Area Safe Streets Task Force (MASSTF). Since 2018, I have investigated violations of federal law, directed drug and street gang investigations, obtained, and executed search and arrest warrants related to the distribution of illegal narcotics, violent incident crimes, and debriefed confidential informants and cooperating defendants. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

5.      I have participated in multiple firearm and violent crime investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. This electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators.

6.      I am familiar with computers, cellular devices, pagers, and other electronic media or electronic storage devices and their uses by targets to communicate with co-conspirators and others. These devices often contain evidence of illegal activities in the form of communication

2

records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know targets take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, and their drug proceeds. These targets usually maintain these photographs or videos on computers, cellular devices, and other electronic media or electronic storage devices.

7.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1958 & 2(a) (murder for hire and conspiracy to commit murder for hire) and §§ 924(c)(1)(A)(iii) & 2(a) (discharge a firearm during a crime of violence), 18 U.S.C. § 371 (conspiracy to violate the laws of the United States), 18 U.S.C. §§ 1341, 1349 (mail fraud & mail fraud conspiracy), have been committed by Ronell BOWMAN (dob: 01/07/1995), and others, and that there is also probable cause to search Devices A and C, as described below and in Attachment A, for evidence of these crimes, as described in Attachment B.

### IDENTIFICATION OF THE DEVICES TO BE EXAMINED

9.      The property to be searched is the following:

a.      A blue iPhone 12 pro max with an otter box case, listed under Milwaukee Police Department Inventory number 21025549, item 1, (Referred to herein as "Device A"). Device A is currently located at the Federal Bureau of Investigation Milwaukee Field Office located at 3600 S. Lake Drive, St. Francis, WI 53235.

3

b. A red Apple iPhone XR Apple iPhone bearing serial number DX3ZP3D0KXKT (Referred to herein as "Device C"). Device C is currently located at the Federal Bureau of Investigation Milwaukee Field Office located at 3600 S. Lake Drive, St. Francis, WI 53235.

## **PROBABLE CAUSE**

10.     As described in federal search warrant 21-953M(NJ), attached and incorporated by reference, since February 2021, the ATF, MPD, Federal Bureau of Investigation (FBI), and Drug Enforcement Administration (DEA) have been investigating identified members of the Wild 100s, a violent street gang in Milwaukee, including Ronnie JACKSON, Lawrence TURNER, and Ronnell T BOWMAN, among others, for federal firearms offenses and other federal offenses.

11.     This investigation has yielded an initial indictment charging BOWMAN and JACKSON with a conspiracy to commit murder for hire and BOWMAN, JACKSON, TURNER and 27 other defendants with conspiracy to commit mail fraud and other crimes. This investigation has now yielded convictions against the majority of those defendants, and the three remaining defendants were charged in a superseding indictment on October 8, 2024. The superseding indictment added TURNER to the murder for hire charges and related 924(c) charge that BOWMAN and JACKSON were previously charged with in the original indictment.

12.     During the course of this investigation, agents have recovered numerous cell phones and computers from BOWMAN and obtained numerous federal search warrants to search those items. Three of these cell phones are relevant to this warrant application:

a. Device A: a blue iPhone 12 pro max with an otter box case, listed under Milwaukee Police Department Inventory number 21025549, item 1. Device A was recovered on BOWMAN's person when he was arrested by the Milwaukee County Sheriff's

4

Office at General Mitchell International Airport on July 7, 2021.  Device A was subsequently transferred to the Milwaukee Police Department and then to the FBI, who forensically downloaded it pursuant to federal search warrant 21-953M(NJ).[1]

b.  Device B:  A blue iPhone with clear protective case, serial #F2LFQ2ZA0D46 recovered from BOWMAN's person on November 2, 2021 in Cypress, Texas.  BOWMAN provided written and verbal consent to the search Device B on November 2, 2021 and provided the passcode of 1017.  Your affiant confirmed that passcode unlocked Device B.

c.  Device C: A red Apple iPhone XR Apple iPhone bearing serial number DX3ZP3D0KXKT.  Device C was recovered during the execution of a federal search warrant at BOWMAN's residence located at 14103 Micmac Court, Cypress, Texas on November 2, 2021.  Device C was seized and forensically downloaded pursuant to federal search warrant 21-MJ-2304 signed on October 28, 2021, by the Honorable Frances Stacey, United States Magistrate Judge in the Southern District of Texas.

13.  Your affiant is aware that a review of the forensic download of Device B recently revealed that it contained a "Note", pictured below, which appeared to contain a list of passwords for a wide variety of BOWMAN's accounts:

---

[1]  Search Warrant 21-953M (NJ) and Search Warrant 21-MJ-2304 (SDTX) are hereby incorporated by reference and attached hereto as Exhibit A.

5

(ICLOUD) Davemoney1001@gmail.com/Boski1020
(FB) Boski1017
(IG) Bigronnybow/Boski1020

(Chime) Bigronnybow@gmail.com/ Boski1020
Blink cameras/ Bowman1017! Bigronnybow@gmail

(HOMEWAV) ronnybow/ Boski1020!

(Gmail) boski1017!

(Western union) Bigronnybow@gmail.com (Boski1020!)

Bigronnybow@gmail.com/ Boski1017 (distrokid)

Bigronnybow@gmail.com/ Boski1020 (AccessCorrections)

14.     Your affiant recalled that Device B was opened with the passcode "1017" and noticed that a large percentage of the passwords documented in Device B also contained that four-digit phrase "1017".  Your affiant was also aware that although a full searches of Device A and Device C were authorized by the above-mentioned warrants in 2021, only a partial extraction was able to be completed, because at that time investigators were unaware of the passcode which would unlock those devices.  Accordingly, your affiant retrieved Devices A and C from where they had been securely stored at the FBI, tested that "1017" passcode, and found that it unlocked both Device A and Device C.

**EVIDENCE LINKING BOWMAN AND TURNER TO MURDER FOR HIRE**

15.     On October 3, 2024, a cooperating defendant (CD) provided a statement to case agents regarding the murder for hire scheme that resulted in the death of a man with the initials N.B.  Specifically, regarding the day of the homicide, April 5, 2021, CD stated that he was riding around with Romaine Hawthorne, aka "RealHaulin" in a Zipcar, which was a "hype rental" that Hawthorne got from "Dom," one of Hawthorne's drug customers. On April 5, 2021, CD and Hawthorne were selling drugs, including heroin and cocaine, and CD was armed with a 9mm

6

Glock 43x. CD stated that Hawthorne had set up a deal with N.B. (victim of the homicide) to purchase marijuana, which is corroborated by a call from N.B. to Hawthorne at approximately 8:28 p.m. CD stated that Hawthorne then wanted him to drop him off at a female's house near 27th and North and asked CD to complete the marijuana purchase from N.B. CD stated that he was on a Facetime call with BOWMAN and Lawrence TURNER and they were discussing shooting up the area of 21st & Meinecke that night (April 5, 2021) because they had information that GBC gang members were currently hanging out there; however, after dropping off Hawthorne, and while Facetiming with BOWMAN (who was out of State) and TURNER, they suggested that N.B. was an easier target to kill because he was Keyon Stewart's guy (rival gang member), and they knew where he was and he expected someone to come and purchase the marijuana. BOWMAN then offered CD and TURNER $10,000 each if they killed Buford, during that call. CD further stated that CD then picked up TURNER at his mother's residence, and CD (armed with a 9 mm 43x) and TURNER (armed with a .45 caliber with a machinegun conversion device and a 9 mm) both shot at N.B. later that night, killing N.B. The medical examiner determined that N.B.'s death was a homicide and his autopsy revealed 28 gunshot wounds. CD further described various telephone calls and Facetime calls between BOWMAN, CD, and TURNER both that night, April 5, 2021 and the morning after, April 6, 2021.

16. Additionally, Cashapp records revealed that after the homicide of N.B., which occurred on April 5, 2021, BOWMAN sent TURNER $1,000 via Cashapp on April 6, 2021. Case agents reviewed flight records for TURNER and discovered that he travelled from Chicago, O'Hare Airport to BOWMAN's location in Houston, Texas on April 6, 2021, via Spirit Airlines. Per the subpoenaed flight records, TURNER's Spirit Airlines ticket was purchased by BOWMAN using a Visa card ending in x6727. TURNER returned to Chicago, O'Hare Airport on June 8,

2021, via Spirit Airlines. Once again, the flight was paid for by BOWMAN.

17. Specific to this investigation, your affiant is aware that prior analysis of data from forensic downloads of cellphones has proven invaluable. Prior downloads from BOWMAN linked cell phones have disclosed: financial transactions surrounding the homicide; screenshots of a Facetime communication from the scene of the homicide; BOWMAN modifying contact information for "Lawrence" (TURNER) within a day of the homicide and other evidence.

18. Your affiant has spoken with forensic experts with the FBI and believes based on those conversations as well as experience in prior unrelated investigations that a complete forensic download of the now-unlocked Devices A and C will yield a much more complete picture of BOWMAN's activities and communications surrounding both the murder for hire and the underlying fraud conspiracy.

19. Based upon my training and experience and the evidence set forth above, I believe probable cause exists to search the electronically stored information described in Attachment A for evidence of violations of 18 U.S.C. §§ 1958 & 2(a) (murder for hire and conspiracy to commit murder for hire) and §§ 924(c)(1)(A)(iii) & 2(a) (discharge a firearm during a crime of violence), 18 U.S.C. § 371 (conspiracy to violate the laws of the United States), 18 U.S.C. §§ 1341, 1349 (mail fraud & mail fraud conspiracy).

## TECHNICAL TERMS

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call

8

log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices

9

and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

21.   Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22.   Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

10

23.     There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

    a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

24.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

11

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the would permit the examination of Device A for electronically stored information described in Attachment B.

26. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession and the electronically stored information previously extracted from the devices, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of Devices A & C as described in Attachment A, to seek the items described in Attachment B.

12

**<u>ATTACHMENT A</u>**

The property to be searched is:

a. A blue iPhone 12 pro max with an otter box case, listed under Milwaukee Police Department Inventory number 21025549, item 1, (Referred to herein as "Device A"). Device A is currently located at the Federal Bureau of Investigation Milwaukee Field Office located at 3600 S. Lake Drive, St. Francis, WI 53235.

b. A red Apple iPhone XR Apple iPhone bearing serial number DX3ZP3D0KXKT (Referred to herein as "Device C"). Device C is currently located at the Federal Bureau of Investigation Milwaukee Field Office located at 3600 S. Lake Drive, St. Francis, WI 53235.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.  All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 371 (conspiracy to violate the laws of the United States), 18 U.S.C. §§ 1341, 1349 (mail fraud & mail fraud conspiracy), and 18 U.S.C. §§ 1958 & 2(a) (murder for hire and conspiracy to commit murder for hire) and §§ 924(c)(1)(A)(iii) & 2(a) (discharge a firearm during a crime of violence), involving Ronnell BOWMAN and others, including but not limited to the following:

    a.  Any communications between BOWMAN and any co-conspirators on April 5, 2021 or communications in furtherance of the murder for hire scheme;

    b.  Location information of BOWMAN and any co-conspirators on April 5, 2021 and any information regarding BOWMAN's schedule, pattern of movement or travel;

    c.  Any payment information including bank transfers, Cashapp transfers, text messages, social media messages, audio/video messages or photographs of bank records, or other financial records;

    d.  Photographs of any firearms or machinegun conversion devices;

    e.  Records of Internet Protocol addresses used; records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

    f.  Any information related to the application for, receipt of, or expenditure of any unemployment insurance benefits; and

    g.  Any information related to the solicitation or recruitment of anyone to aid, abet, or assist in the application of unemployment insurance benefits.

2.  Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

Case 2:24-mj-00930-NJ     Filed 10/25/24     Page 21 of 21     Document 1